**Steven Todd CASTLEBERRY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–02–00293–CR.**

Court of Appeals of Texas, San Antonio.

Dec. 24, 2002.

Scott H. Pawgan, Attorney At Law, Huntsville, for Appellant.

Scott W. Rosekrans, Crim. Dist. Atty., Phil Nichols, Asst. Crim. Dist. Atty., Coldspring, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by: ALMA L. LÓPEZ, Justice.

Steven Todd Castleberry ("Castleberry") appeals his conviction of unlawfully carrying a weapon. The sole issue presented on appeal is whether the trial court erred in denying Castleberry's motion to suppress a knife and a statement he made after his arrest. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

### BACKGROUND

Gordon Ray Marrs and Donald Edward Marrs purchased a large amount of tools and equipment and placed them in a storage facility. Several individuals, including Castleberry, were present at the storage unit located across from the unit leased by Gordon and Donald and saw them placing their tools and equipment in the unit. A few days later, Gordon and Donald discovered that the lock on their storage unit had been cut and the tools and equipment had been stolen. In addition to reporting the burglary to the sheriff's department, Donald asked the manager of the storage facility to call him when any individuals came to the storage unit located across from their unit.

A few days later, the manager called, and Donald went to the storage facility. Donald parked behind a Bronco which was parked in front of the adjacent unit. Before Donald could get out of his truck, the owner of the storage unit, Stephanie Hay, quickly attempted to close the door to the unit; however, a lawn mower prevented the door from closing. Donald approached Hay, and the two exchanged words. Hay ran to her Bronco. Donald told her that he knew his tools and equipment were in her storage unit, and someone was going to have to shut the door to her storage unit. When Hay lifted the door to move the lawn mower so she could close the door completely, Donald saw his snake bite kit. Donald called the police. While waiting for the police, Donald walked around the Bronco and saw some of his tools and equipment in the Bronco. Castleberry was seated in the passenger seat of the Bronco with the door locked.

Gordon arrived at the storage facility and also saw Castleberry seated in the Bronco. Gordon also saw some of his tools and containers in the Bronco.

Detective Verlon Powdrill and Deputy Robert Wright responded to a dispatch that Donald had found some subjects at the storage facility that he believed were responsible for the burglary. Detective

Powdrill first spoke with Donald. Donald told him that Hay had opened her storage unit, and Donald saw his snake bite kit in the storage unit. Donald also told him that he saw his toolbox in the back of the Bronco. Donald testified that he also told the officers that he had seen Castleberry at the storage unit on the day he moved the tools and equipment into his storage unit. Powdrill testified that he could not recall if Donald identified Castleberry as one of the individuals he mentioned was present at the storage facility when he moved the tools and equipment into his storage unit. Deputy Wright could not recall if Donald had specifically told him that he had seen Castleberry on the date he moved his tools and equipment into his storage unit.

After this conversation, Hay voluntarily opened the storage unit, and Detective Powdrill retrieved the snake bite kit. At that time, Detective Powdrill arrested Hay and Castleberry. After the arrest, the Bronco was inventoried. During the inventory, Deputy Wright discovered a knife under the driver's seat. Deputy Wright asked whose knife it was, and Castleberry responded that the knife was his.

On cross-examination, Detective Powdrill stated that Hay was the owner of the Bronco, and the storage unit was registered to Hay. Detective Powdrill stated that the only connection that Castleberry had to the stolen property was his presence as a passenger in the Bronco.

Deputy Wright testified that the decision to arrest Hay and Castleberry was made by Detective Powdrill. Deputy Wright could not recall when Hay and Castleberry were read their *Miranda* rights, stating that their rights may not have been read until after he discovered the knife.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). We give almost total deference to the trial court's determination of historical facts and review the application of the law to the facts de novo. *Id.*

## KNIFE

■ Article 14.01 of the Texas Code of Criminal Procedure provides that a peace officer may arrest an offender without a warrant for any offense committed in his presence. TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 1977). The test for probable cause for a warrantless arrest is whether the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense. *Guzman v. State*, 955 S.W.2d 85, 90 (Tex.Crim.App.1997). The determination of the existence of probable cause concerns the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act. *Id.* at 87. Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Id.* It is not necessary that the officer be certain that the offense was committed. *Joseph v. State*, 3 S.W.3d 627, 634 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

■ Unexplained possession of recently stolen property establishes the offense of theft. *Chavez v. State*, 843 S.W.2d 586, 588 (Tex.Crim.App.1992); *Jackson v. State*, 12 S.W.3d 836, 839 (Tex.App.-Waco 2000, pet. ref'd). Castleberry challenges whether Detective Powdrill had reasonably trustworthy information sufficient to war-

rant a reasonable person to believe that Castleberry was in possession of the recently stolen property.

■ Based on the testimony of Donald and Detective Powdrill, the trial court could have found that Donald told Detective Powdrill that Castleberry was present at the storage facility on the day the tools and equipment were moved into the storage unit. Detective Powdrill was certain that Donald mentioned seeing some men at the storage facility, and Donald testified that he identified Castleberry as one of those men. This information coupled with Castleberry's subsequent presence in the Bronco at the storage unit was sufficient information to warrant a reasonable person to believe that Castleberry was in possession of the recently stolen property because the information raised more than mere suspicion even though it was far less evidence than that needed to support a conviction or even needed to support a finding by a preponderance of the evidence. Accordingly, probable cause existed to support Castleberry's arrest. Castleberry does not have standing to challenge the probable cause to support Hay's arrest, and the officers had the authority to inventory the Bronco containing stolen property incident to Hay's arrest. *See Stephen v. State*, 677 S.W.2d 42, 44 (Tex.Crim.App.1984); *Yaws v. State*, 38 S.W.3d 720, 723 (Tex.App.-Texarkana 2001, pet. ref'd).

## STATEMENT

■ Castleberry also complains that the trial court should have suppressed his statement that the knife was his because the statement was made while Castleberry was in custody and before he was read his *Miranda* rights. Because Castleberry had been taken into custody, no custodial interrogation could occur until he was read his *Miranda* rights. *Miranda v. State of Ari-*

*zona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Interrogation" under *Miranda* refers to express questioning that the police should know is reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301–02, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The term "incriminating response" refers to any response that the prosecution may seek to introduce at trial. *Id.* at 302 n. 5, 100 S.Ct. 1682.

The State asserts that Deputy Wright's question regarding whose knife he found was general on-the-scene questioning. We disagree. The question clearly was designed to elicit an incriminating response from either Castleberry or Hay. Because Castleberry had not been read his *Miranda* rights, the trial court should have suppressed his statement.

■ The State also contends that any error in admitting the statement was harmless. Again, we disagree. The denial of the motion to suppress undoubtedly contributed in some measure to the State's leverage in the plea bargaining process and may well have contributed to Castleberry's decision to relinquish his constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation. *McKenna v. State*, 780 S.W.2d 797, 799 (Tex.Crim.App.1989); *Woodberry v. State*, 856 S.W.2d 453, 458–59 (Tex.App.-Amarillo 1993, no pet.). As a result, the error cannot be found harmless.

## CONCLUSION

The judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.